IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| TIFFANY LAGENIA NOELS et al., | * | |
|---|---|---|
| | * | |
| PLAINTIFFS | * | |
| | * | |
| v. | * | Civil Action No: 8:17-cv-03218-GJH |
| | * | |
| | * | |
| OCWEN LOAN SERVICING LLC | * | |
| et al., | * | |
| | * | |
| DEFENDANTS | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' RESPONSE TO DEFENDANT BROCK AND SCOTT, PLLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Now comes, Tiffany L. Noels, the Plaintiff et al., by and through their attorney, Marie Lott Pharaoh, who, file this Response, and for good cause states the following.

I. **INTRODUCTION**

What is telling about the Defendants, including Brock & Scott, in this instance, is the failure to deal with the voidness of the Loan Modification Agreement ("Agreement"). Furthermore, they obfuscate regarding the false affidavits filed in both the state and federal courts. Those are the central issues flowing through this entire debacle. Our Defendant, Brock and Scott, skirt and skate around the fact that it filed fraudulent documents in the Circuit Court for Prince George's County.

It shall never be permissible for any litigant to file fraudulent documents in any court of law with impunity.

The Plaintiff seeks relief in this Article III Court because there is no other court in which her cause can be heard fully, completely. As noted in her Complaints, the process in the state court for a foreclosure action limited the Plaintiff's ability to, in the first instance, test the sufficiency

of the evidence – the total indebted affidavit – filed with the Order to Docket. Thus, the affidavit was given *prima facie* veracity, and Plaintiff, proceeding *pro se*, was not aware of the time to file her motion to dismiss. Thus, Fed.R.Civ.P. 15(a) the state court summarily denied her motion. She is bringing to bear the full judicial power afforded to this Court by the United States Constitution to right a wrong perpetuated upon her by all the Defendants in this action.

Plaintiff states here that the Amended Complaint filed against Brock and Scott is timely, as it was never impleaded in the original Complaint. Also Ocwen's Motion to Dismiss is not a responsive pleading under Fed.R.Civ.P. 12(b)(6), so Plaintiff lawfully and with full rights under Fed.R.Civ.P. 15(a) Rule 15(a) could amend her Complaint freely.

## II. SUMMARY OF WELL-PLED FACTS

While there are many interesting facts in this case, only the following facts, more fully set forth in Plaintiff's Amended Complaint, are relevant to Defendant's Motion to Dismiss. Ocwen and Plaintiff entered into a Loan Modification Agreement ("Agreement") of her mortgage note. The Plaintiff reasonably relied on Ocwen to perform under the Agreement. When Ocwen admitted that there errors in the Agreement, Plaintiff relied on Section 4, Paragraph L that the Agreement was void. As void, she correctly reasoned that she was not obligated to pay under the Agreement until Ocwen sent her a corrected agreement.

Ocwen owes a common law duty of care to Plaintiff due to the intimate nexus between them, and Plaintiff's reasonable reliance upon Ocwen's representations as a real estate professional tendering services to her. Moreover, Ocwen voluntarily accepted a duty of good faith and fair dealing with Plaintiff and other borrowers like her as a condition of its license and Maryland mortgage lender. (Ocwen also owes a statutory duty of care to the Plaintiffs under the Maryland

2

Consumer Protection Act ("MCPA") to make a "reasonable investigation" of the facts of a real estate transaction. It took Ocwen over two years to admit that it had in fact made an error in the calculation of Plaintiff's principal balance – adding $8107 to the principal balance in the Agreement. Upon notice of this error, as set forth in the plain language of the Agreement, the Agreement was rendered void and Ocwen had obligated itself to send the Plaintiff a corrected agreement. It has never done so.

Instead, rather than honoring the Agreement, it proceeded to foreclose on the Plaintiff's property. In the Order to Docket, Brock and Scott, shirking its responsibilities as officers of the court, filed a fraudulent document on behalf of Ocwen that incorrectly stated the total debt owed. Furthermore, Brock and Stock failed to review the Agreement, upon which the affidavit was based. Had it done so, it would have realized, it would have known, that the Agreement was void and should never have served as a base for the affidavit of total indebtedness. The Plaintiff as of July 7, 2014 according to Ocwen did not owe anything more on the deferred principle balance. *Exhibit 1*.

Ocwen, knew and knows the power of an officer of the court. No court truly questions the filing of an attorney without some impetus from another party. Attorneys take a solemn oath to uphold the law, to work within legal parameters, to represent their clients within the auspices of the law. Ocwen has taken advantage of the comity between attorneys and the courts to unlawfully, impermissibly continue its racket to take homes from Maryland residents with impunity.

### III. STANDARD OF REVIEW

**A. Fed.R.Civ.P. 12(b)(6) Motion to Dismiss**

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.544 (2007)).

In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and, conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*,127 S. Ct.1955, 1969 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must also view the factual allegations of the complaint "in the light most favorable to plaintiff." *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir.1984).

**B. Fed.R.Civ.P. (8) & 9(b) Pleading Requirements**

Pleadings are generally required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation must be "simple, concise and direct." *Id.* at 8(d)(1). The purpose of a motion to dismiss is to test the sufficiency of the complaint. A plaintiff's complaint need only satisfy the standard of Rule

4

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion [s] devoid of further factual enhancement." *Hart v. Lew*, 973 F.Supp.2d 561, 571 (D. Md. 2013) (internal citations omitted). However, when asserting claims based in fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

Conversely, statutory consumer protection claims, based on non-fraudulent but unfair or deceptive conduct, are not necessary required to be pled with particularity. Judge Titus explained the limits of the requirement to plead with particularity in the context of remedial, consumer protection statutes [similar to those in this matter] as follows: [Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the [*Racketeer Influenced and Corrupt Organizations* Act] claims (e.g. existence of a conspiracy) *in addition to* the predicate acts of mail and/or wire fraud. *Williams,* 498 F.Supp.2d at 842.

For the remaining RICO elements and *the remaining non-RICO claims, Plaintiffs' allegations are construed under the more liberal pleading standard of a "short and plain statement of the claim showing that the pleader is entitled to relief." m*Fed.R.Civ.P. 8(a)(2); *see also Baltimore County v. Cigna Healthcare,* 238 Fed.Appx. 914, 921 (4th Cir.2007) (holding that the "notice pleading" standard of Fed.R.Civ.P. 8 applies to allegations of non-fraudulent conduct and thus plaintiff's claim of negligent misrepresentation did not need to be pleaded with particularity under Fed.R.Civ.P. 9(b)). Because the remaining claims in Plaintiffs' complaint do

5

not allege fraudulent conduct (rather, they consist of the other elements of the RICO claims in addition to claims under [Real Estate Settlement Procedures Act], [Protection of Homeowners in Foreclosure Act], and a gross negligence claim), the lower pleading standard applies.*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476 (D.Md.,2009) (emphasis added).

Finally, Rule 9(b)'s strict requirements do not apply to claims relating to fraudulent concealment and omission claims. *Akinkoye v. Wells Fargo Home Mortg.*, CIV.A. DKC 11-2336, 2011 WL 6180210 (D. Md. Dec. 12, 2011)("In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. *See Shaw v. Brown & Williamson Tobacco Corp.,* 973 F.Supp. 539, 552 (D.Md.1997)"). *Flynn v. Everything Yogurt*, CIV. A. HAR92-3421, 1993 WL 454355 (D. Md. Sept. 14, 1993), ("the more stringent requirements of Rule 9(b) do not apply to omissions").

## IV. ARGUMENT

### A. Rooker-Feldman Doctrine

Invoking the Rooker-Feldman Doctrine is merely a smoke screen used poorly by the Defendant to cover its fraudulent actions in the state court.

The Defendant Brock and Scott, as well as the other Defendants fail to truly understand the nature of this suit and the Rooker-Feldman Doctrine.

First, the Plaintiff is not asking this Honorable Court to overturn the Circuit Court of Prince George's County's decision. Nor is she asserting that the state court's decision is violative of any of her federal or constitutional rights.

Second, her claims in this Honorable Court have merit and stand on their own and are not associated in any way with asking this Court to exercise "appellate" jurisdiction over the state court's decision. Instead, her claim is that the Defendant Brock and Scott violated federal law,

notably the Fair Debt Collection Practices Act ("FDCPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO") by misrepresenting her debt not only when it filed its Order to Docket containing the false affidavit concerning the total debt, but also when it sent to the Plaintiff the sales information that contained all the information in the Order to Docket to include the total indebtedness owed. By failing to fulfill its duties as officers of the Court, Brock and Scott allowed itself to be involved in an enterprise that not only committed wire and mail fraud, but obstructed the ability of both the state court and the United States Bankruptcy Court to fulfill its mission of rending fair and just orders.

Since 2012 Ocwen has harmed homeowners in the Free State. Even after a $2.1 billion dollar settlement, it has continued filing false documents in our courts, continued to not provide our borrowers with correct information, and it has continued its use of law firms who do not take seriously their roles as officers of the court, duty bound to ensure that each and every document filed comports with the law.

Plaintiff will note here that while the statute of limitations has run on the initial filing of the affidavit, it has not on the mailing of the affidavit to the Plaintiff after the foreclosure sale of the property. Furthermore, the total indebtedness was based on a void Agreement. As noted by the Fourth Circuit, the FDPCA is a strict liability statute. *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1190 (11th Cir.2010) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute.") What the Plaintiff is asking is for this Honorable Court to stay the ratification of the foreclosure sale until the matters in this Court have been decided.

Now, let's see what the Supreme Court has said about the Rooker-Feldman Doctrine:

> Since *Feldman,* this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction. **The few decisions that have mentioned *Rooker* and *Feldman* have done so only in passing or to explain why those cases did not dictate dismissal.** See *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.,* 535 U. S. 635, 644, n. 3 (2002) (*Rooker-Feldman* does not apply to a suit seeking review of state agency action); *Johnson* v. *De Grandy,* 512 U. S. 997, 1005-1006 (1994) (*Rooker-Feldman* bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights," but the doctrine has no application to a federal suit brought by a non-party to the state suit.); *Howlett* v. *Rose,* 496 U. S. 356, 369-370, n. 16 (1990) (citing *Rooker* and *Feldman* for "the rule that a federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute"); *ASARCO Inc.* v. *Kadish,* 490 U. S. 605, 622-623 (1989) (If, instead of seeking review of an adverse state supreme court decision in the Supreme Court, petitioners sued in federal district court, the federal action would be an attempt to obtain direct review of the state supreme court decision and would "represent a partial inroad on *Rooker-Feldman*'s construction of 28 U. S. C. § 1257.");[2] *Pennzoil Co.* v. *Texaco Inc.,* 288*288 481 U. S. 1, 6-10 (1987) (abstaining under *Younger* v. *Harris,* 401 U. S. 37 (1971), rather than dismissing under *Rooker-Feldman,* in a suit that challenged Texas procedures for enforcing judgments); 481 U. S., at 18 (SCALIA, J., concurring) (The "so-called *Rooker-Feldman* doctrine" does not deprive the Court of jurisdiction to decide Texaco's challenge to the Texas procedures); *id.,* at 21 (Brennan, J., concurring in judgment) (*Rooker* and *Feldman* do not apply; Texaco filed its federal action to protect its "right to a meaningful opportunity for appellate review, not to challenge the merits of the Texas suit."). But cf. 481 U. S., at 25-26 (Marshall, J., concurring in judgment) (*Rooker-Feldman* would apply because Texaco's claims necessarily called for review of the merits of its state appeal). See also *Martin* v. *Wilks,* 490 U. S. 755, 783-784, n. 21 (1989) (STEVENS, J., dissenting) (it would be anomalous to allow courts to sit in review of judgments entered by courts of equal, or greater, authority (citing *Rooker* and *Feldman*)).

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 US 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 - Supreme Court (2005)(*emphasis added*)

As noted in the delineation of all these cases, Rooker-Feldman is to be narrowly construed. Defendants are wrong-headed about this Doctrine: It is not applicable in this action because the Plaintiff is not asking this Court to overrule or even review the state court's ruling giving the Substitute Trustee's permission to foreclose. Neither is Plaintiff challenging the merits of the state court's ruling, but is claiming that Brock and Scott violated federal and state laws in that action by filing fraudulent documents in the state court and by misrepresenting the debt owed in violation of FDCPA.

Simply because there was a previous state action and this Plaintiff brings an action in federal court that may impact the state court decision, the Rooker-Feldman doctrine in no way divest this federal district court of its power to hear and decide both the federal and state claims set forth in the Amended Complaint.

**B. <u>Maryland Consumer Protection Statutes and Mortgage Fraud Statute Apply to Brock and Stock Actions in the Maryland State Court</u>**

Part of the servicing of the loan, Ocwen had the ability to foreclose on the loan. It hired Brock and Scott to facilitate that foreclosure. Brock and Scott failed to perform its due diligence to ensure that Ocwen had a right to foreclose under the Agreement in the first instance. Brock and Scott, in its provision of professional services to Ocwen and as officers of the court, had an affirmative duty to review the Agreement. Period. It had a further duty to verify that the affidavit was true and correct. That's what good attorneys do, regardless of their capacity as Substitute Trustees, Guardians ad Litem, etc. – they are always officers of the court. It is because an attorney's first estate, as pledged, is to protect the United States Constitution, the laws of the United States, and the laws of the State of Maryland. That pledge stands firm regardless of the attorney's label in any court of law.

Had it carefully reviewed Section 4, Paragraph L of the Agreement, it would have concluded that the Agreement was void and that neither Ocwen nor Deutsche Bank had the right to foreclose.

Review of the Agreement's Section 4, paragraph L is not akin to understanding or providing a solution to the unsolved problems in mathematics. *See* https://en.wikipedia.org/wiki/List_of_unsolved_problems_in_mathematics

Rather, it is an exercise in simply looking at the language in the Agreement. A 1L knows this.

> [A court is to] determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

*Gen. Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985).

Section 4, Paragraph L of the Agreement as the Agreement stated that upon notice of an error in the terms of the Agreement, the Agreement would be void and that Ocwen would provide a corrected Agreement. Ocwen finally acknowledged that there was an error in the Agreement but refused to send out a corrected Agreement. As noted in her Amended Complaint, paying any amount under the void Agreement would have meant ratification of the void Agreement.

"A void contract is `not a contract at all' ... and all parties, present and future, would be equally allowed to avoid the contract." *Julian v. Buonassissi,* 414 Md. 641, 666, 997 A.2d 104 (2010) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. a (1981)).

This Court is presented with a simply question: how can Ocwen, via its minion, Brock and Scott, ask any court to enforce a void Agreement? Even simpler still, why didn't Ocwen, as set forth in Paragraph L, simply provide the Plaintiff with a corrected Agreement? What the Plaintiff must note here is the Brock and Scott cites to Section 3, Paragraph C, while it fails to even mention Section 4, Paragraph L. That's telling because Brock and Scott, like Ocwen, fully knows that the Agreement is void. Plaintiff is not "cherry picking" the provisions in the Agreement. NO! She has held firm that the Agreement, based on Section 4, Paragraph L, is void.

Secondly, Brock and Scott failed in its review to ensure the veracity of documents Ocwen provided. Had it done so, it would have discovered that the Plaintiff did not owe the $39,287.78. Contrary to its allegations in its Motion to Dismiss, the deferred principal balance was forgiven in 2014. If not, then Ocwen is lying now or it lied to Fannie Mae and the Plaintiff. *Exhibit 1* is the letter Fannie Mae sent to the Plaintiff, which shows that Ocwen informed Fannie Mae that the last payment of the deferred principle balance had been forgiven on July 7, 2014.

**C. Unclean Hands is an Effective Remedy to Impugn Brock and Scott's Actions in the State Court**

"The clean hands doctrine was designed to safeguard the judicial process, not to protect the parties." *McGovern, 2004 WL 1764088 at *10* (citing *Smith v. Cessna Aircraft Co.,* 124 F.R.D. 103, 106 (D.Md. 1989)). The actions must be such that they impair the court's ability to effectuate a proper finding in a case, "where [defendants'] unethical behavior has worked a fraud on the court and undermined the judicial process." *Id.* As noted in *Mona v. Mona Elec. Group,*

*Inc.,* 176 Md. App. 672, 714, 934 A.2d 450 (2007), "[f]or the unclean hands doctrine to apply, there must be a nexus between the misconduct and the transaction [at issue], because what is material is not that the [parties'] hands are dirty, but that [they dirty] them in acquiring the right [the parties] now asserts." *Id.*

Brock and Scott states in its Motion to Dismiss that, "Plaintiff has failed to allege fraudulent or illegal conduct." Really? Does it not matter that the Substitute Trustee filed an affidavit that contains incorrect information? Does it matter that that affidavit was based on a void Agreement? Plaintiff had every right not to make payments under a void Agreement. Brock and Scott was not authorized to foreclose because the Agreement was void. Brock and Scott, moreover, violated the FDCPA by filing a false affidavit and by doing so, obstructed justice in the state court.

It knew or should have known, and it can even be stated here that it moved forward with a total reckless regard for the truth and failed utterly to examine the Agreement, upon which the affidavit of indebtedness was based, and failed to examine the requisite documents in Plaintiff's file to discover the forgiveness of the deferred principle balance. The proffered evidence shows that Brock and Scott served as an element to Ocwen's continued racketeering activities to harm Maryland homeowners.

**D. Plaintiff is on-point with her Racketeer Influenced and Corrupt Organizations Act Claim**

Let's make an assumption that Brock and Scott was not some "run of the mill" law firm. Instead, let's assume that it took seriously its role as a law firm offering professional services to Ocwen. Let's further assume that it took even more seriously its role as officers of the court – wherein its main priority was to protect the integrity of our courts. Let's further assume that it

recognized Ocwen's difficulties with providing the requisite services to its clients and its problems with filing false documents in our Courts. What would be the result?

First, it would have reviewed Plaintiff's entire Ocwen file in an effort to protect Ocwen's position. Let's remember that Ocwen entered into a Consent Agreement with 49 states and the Consumer Financial Protection Bureau in 2013. All around the United States, states, borrowers have been sorely dissatisfied with Ocwen's operations. Brock and Scott would have been drawn to all the complaints, calls lodged by the Plaintiff. It would have examined carefully the email colloquy between Matthew Parker and the Plaintiff, wherein Mr. Parker admitted that Ocwen made a mistake in the calculation of the principal balance in the Agreement on January 27, 2015. It would have seen the letters Ocwen sent to Fannie Mae and the Plaintiff that clearly state that the last payment of $39, 782.78, representing the deferred principle balance to be forgiven, had been forgiven on July 7, 2014. And it would have fully reviewed the Agreement between the Plaintiff and Ocwen to ensure that the relationship between the parties was supported by the Agreement rather than the promissory note, which the Agreement, by its very terms had modified.

RICO is nothing more than a statute to stop an entity like Ocwen, in the case *sub judice,* who has a scheme to further its own illegal ends by using any mechanization that will assist it in doing so. In this case, as in others, it uses those law firms who are not performing as officers of the court, not putting the law before its financial gain, has a history of not performing their due diligence to protect both Ocwen and the borrower. The scheme concerns abrogating the law and using the foreclosure and bankruptcy non-existence evidence testing processes to further its scheme of unlawful foreclosures. It is not complicated, just a racket that exploits the weakness in our system of laws and justice.

While Brock and Scott weakly points to the attorney-client relationship as innocuous; yet, it is only through the attorney-client relationship can Ocwen use the law firm attorneys to file the fraudulent documents. The attorneys give the document even more imprimatur of validity. They are officers of the court sworn to uphold the law, and, in that regard, protect the integrity of the courts. Yet, they do not behave as such by testing the evidence given to them under the scrutiny good lawyers use to ensure that every single document filed in a court of law is true and accurate, comports with the law.

A homeowner filing a motion to dismiss in Maryland's foreclosure action is not entitled to a hearing. Given the presumption that the creditor is filing documents that are true, that comport with the law, a homeowner has an uphill battle to challenge the veracity of the documents in the Order to Docket. And woe to the homeowner, proceeding *pro se*!

## **CONCLUSION**

Plaintiff has met her burden. Her simple and plain statements have put Defendant, Brock and Stock, on notice as to what it must defend against. It must defend against its failure to perform its duty as an officer of the court and as attorney for Ocwen to ensure that all documents filed in the Circuit Court of Maryland for Prince George's County were true and accurate. It failed to safeguard our courts from fraudulent activities continuously perpetuated by Ocwen to further its goal to harm Maryland homeowners.

Plaintiff survives this Motion to Dismiss as Brock and Scott is fully aware of what it must defend against. Any additional information can be had in the discovery process as this case moves forward.

**WHEREFORE**, the Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss and move this case forward towards a hearing before a jury of Plaintiff's peers.

Respectfully submitted,

February 27, 2018

/s/ Marie Lott Pharaoh
Marie Lott Pharaoh 11080
16029 Dorset Road
Laurel, Maryland 20707
(240) 606-3494 Phone
(240) 536-9157 Fax
mariepharaoh@gmail.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on that on February 27, 2018 a copy of the foregoing Memorandum electronically filed will be served via the Court's CM/ECF system to the following:

Brennan B. Ferguson, Esq.
Brennan Baxter Ferguson, Esq.
Counsel for Defendant, Brock and Scott, PLLC

Thomas F. Lucchesi, Esq.
Stradley, Ronon Stevens & Young, LLP
Counsel for Defendant, Ocwen Loan Servicing LLP

And any other counsel of record requesting notice of this action.

/s/Marie Lott Pharaoh
Marie Lott Pharaoh