# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TIFFANY LAGENIA NOELS et al., | * |
| PLAINTIFFS | * |
| v. | * Civil Action No: 8:17-cv-03218-GJH |
| OCWEN LOAN SERVICING LLC et al., | * |
| DEFENDANTS | * |

## PLAINTIFFS' RESPONSE TO DEFENDANT OCWEN'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' AMENDED COMPLAINT

Now comes, Tiffany L. Noels, the Plaintiff et al., by and through their attorney, Marie Lott Pharaoh, who, file this Response, and for good cause state the following,

### I. INTRODUCTION

Ocwen makes much ado about the procedural history of this Plaintiffs trying to save her family home. Contrary to Ocwen's contentions in its Motion to Dismiss/Strike Plaintiff's Amended Complaint, that this matter "essentially stems from a state court foreclosure of Plaintiff, Tiffany L. Noels' ("Plaintiff"), property located at 1214 Iron Forge Road, District Heights, MD 20747," this stems from Ocwen filing a false affidavit of Plaintiff's total indebtedness and concealing the void Loan Modification Agreement ("Agreement") upon which the affidavit of total indebtedness was based in the Circuit Court for Prince George's County. Then the Defendant skulked, with temerity, like a wily jackal, into the United States Bankruptcy Court and filed a fraudulent proof of claim, stating in its motion that it did so only to lift the automatic stay, as if that ameliorates the falseness of the claim.

The lack of respect for the rule of law is the essence and legal base of this action. This Defendant lacks contrition coupled with great hubris, who continuously and ostentatiously boasts about its ill-gotten hollow victories, illegally obtained through deception, concealment, and fraud. Ocwen's and the other Defendants' actions have undermined the integrity and obstructed justice in both the state and federal courts.

"Plaintiff has exhausted every possible challenge to the foreclosure itself and has now resorted to vexation litigation to try and delay the inevitable." The Plaintiff begs to differ. This Article III Court is exactly the necessary forum wherein Plaintiff can fully litigate the issues upon which her Complaints are based. What the Defendant fails to state is that the nature of both the foreclosure and bankruptcy processes lends themselves to bad actors like Ocwen filing false documents with seeming impunity. Rather than saying "mea culpa," it engages in *ad hominen* attacks and obfuscation of the facts.

The facts are clear: the Agreement is void, the affidavit of total indebtedness is incorrect in violation of Md. Rule 14-207 (b), and the proof of claim is chocked full of mistakes contravening Fed. Rule of Bankr. P. Rules 3001(c)(2)(B) and 3001(c)(2)(B). Filing a false proof of claim is a criminal act under 18 U.S.C. §§ 152, 157, and 357. This fraudulent proof of claim, moreover, prevented the Plaintiff from finding relief in her Chapter 13 bankruptcy case: her counsel, an experienced bankruptcy attorney who volunteers at the Debtors Assistance Project was not able to fashion a confirmable Chapter 13 plan! The multitudinous errors contained therein prevented counsel from being able to calculate the arrears. Incredible!

Not once in any of its pleading has Ocwen or any of the other Defendants dealt with, mentioned, or argued against the voidness of the Agreement. Nor has Ocwen answered why it filed through its counsel Shapiro & Brown, LLP, a fraudulent proof of claim, except to assert, it

did so to file its motion to lift stay. No, a creditor files a proof of claim to state with accuracy, under the penalties of perjury, the amount a debtor owes. Furthermore, Ocwen asserts incorrectly that the Plaintiff was in default under the Agreement. She was never in default because she was not obligated to pay under the void Agreement. Furthermore, she paid her mortgage payments on time since 2006 when she first purchased her family home.

Defendant in addressing the Complaints states that "All allegations seemingly stem from inaccuracies imbedded in the 2012 modification which initially identified an inaccurate principal loan balance, a negative amortization schedule, and an improper balloon payment due on the loan's maturity date; although Plaintiff's current claims appear solely related to the inaccurate principal loan balance." The most important element of the inaccurate principle loan balance is that Ocwen's acknowledgement of the same voided the Agreement. The inaccurate deferred principal loan balance was acknowledged by Ocwen on January 27, 2015 and that acknowledgement, based on Section 4, paragraph L voided the Agreement. As such, Ocwen should never have based the affidavit of total indebtedness on the void Agreement, should never have sought to foreclose and should never have moved forward to lift the automatic stay.

"It is of note that in neither Plaintiff's Motion for Extension of Time nor any communications between counsels, did Plaintiff seek consent or leave to file an Amended Complaint." The law provides that Plaintiff can freely move to file an Amended Complaint without leave of this Honorable Court or Ocwen's learned counsel. Plaintiff had every right under Rule 15(a) to file her Amended Complaint. The Motion to Dismiss is not a responsive pleading that required the Plaintiff to file her amended complaint within 21 days from the filing of the Defendant's Motion to Dismiss. Plaintiff's counsel will note here that she spoke to Ocwen's counsel and he told her to take as much time as she needed, given the former's

counsel's family situation. Plaintiff's counsel did so, thinking that Ocwen's counsel was extending professional courtesy.

Plaintiff is seeking justice under the rule of law. The words "Equal Justice Under Law" are engraved on the front of the United States Supreme Court. These words embody the ideal of the Rule of Law. The American commitment to the rule of law means that every citizen is governed by the same laws that should be fairly and equally applied by our judicial system. We must be faithful to the rule of law because it is the bedrock for democracy and for a civil society wherein everyone rights are respected and each person is guaranteed liberty and equality of opportunity.

The Defendant should not be allowed to contravene the rule of law by filing false documents under the imprimatur of accuracy -- attesting under the penalties of perjury to the veracity of the documents – then not acknowledging their perfidy, but boasting of their baseless victories in this Honorable Court.

## II. <u>BACKGROUND</u>

One pertinent issue with the Defendant's discussion of the Agreement is that it never has presented a counter-argument as to why the Agreement is not void. Its failure to do so does not make the issue moot. In contrast, the issue of the void Agreement is ripe. It is also notable that the Defendant does not mention that the $117, 863.34 has been forgiven in full. Yes, it is this void Agreement that forms the basis for Plaintiff's claims for relief.

"Thereafter, Plaintiff defaulted on the Loan Modification agreement and, as a result, Ocwen through Substitute Trustees, Brock & Scott, PLLC, began a foreclosure by filing an Order to Docket in the Circuit Court for Prince George's County on February 10, 2016." The Plaintiff did not default on the Agreement; rather the Agreement became void when Ocwen on

January 27, 2015 admitted that it had made an error in the calculation of the principal balance. Ocwen according to the Agreement should have sent to the Plaintiff a corrected Agreement pursuant to section 4, paragraph L of the Agreement.

What Defendant fails to point out is that a hearing is not granted as a matter of right in Maryland foreclosure actions. The Court has to find good cause to grant a hearing and in the majority of the cases, the Motions to Dismiss, etc. are denied. Defendant also fails to note is that Shapiro & Brown filed a Motion to Lift Stay in the Chapter 7 case. Dkt#14 (see Defendant's *Exhibit E* attached to its Motion to Dismiss/Strike ) on December 19, 2016. A hearing on the Motion was held on January 5, 2017. (*Exhibit E*) At the hearing the Plaintiff requested that Ocwen provide a copy of the original promissory note and the Court order Ocwen to produce the note, but Ocwen without explanation, withdrew the Motion on February 1, 2017. Dkt# 23 (*Exhibit E*). Filing a motion to lift stay in a chapter 7 bankruptcy case is highly unusual as it usually takes four months from the time the petition is filed for the debtor to obtain a discharge. A reasonable creditor would just wait after the discharge to move forward with the foreclosure action.

Once again Ocwen attempts to obscure the facts. The Plaintiff filed a motion to convert her Chapter 7 case to a Chapter 13 on March 29, 2017 and the Court granted her motion on April 3, 2017. *Dkt # 31 and 32, respectively*. Defendant then filed another motion to lift stay on July 26, 2017, Dkt # 70, and the Court entered an order granting the motion on August 27, 2017. *Dkt # 81*. (Plaintiff will note here that she was proceeding *pro se* in all these matters and finally retained counsel on September 19, 2017.) Counsel on behalf of the Plaintiff filed a Motion for Reconsideration on September 19, 2017. *Dkt # 86*. This motion was summarily denied on October 19, 2017.

Ocwen again fails to tell the whole truth. It does not mention that the lifting of the automatic stay was based on the void Agreement and the fraudulent proof of claim. It relied on these documents to get the automatic stay lift. *Exhibit #1*. The relief from the automatic stay was obtained unlawfully.

With regards to the Notice of Removal, Plaintiff's counsel was dealing with a case of first impression for her and many of her colleagues who were unable to advise her on filing a Notice of Removal, and in her efforts to assist Plaintiff, she mistakenly filed the Notice of Removal with this case. Again, Ocwen misconstrues the facts: This Honorable Court never issued an Order Striking the Notice of Removal. The Clerk of the Court simply removed it from the Docket. Counsel researched the matter further, spoke to the Clerk of the Court, and filed an Amended Notice of Removal.

The Rule of Law is not an abstract concept to be debated over by philosophers or erstwhile politicians. It is the bedrock, the base, the *sine qua non* of civil society and a thriving democracy. Justice extends out beyond and moves back into the rule of law; it is the *spirit* that guides the meaning of the rule of law. Let justice be down by mandating that Ocwen adhere to our laws, our statutes, our collective understanding and adherence to fairness and equality for every citizen in our judicial system.

### III. ARGUMENT

#### A. Plaintiff's Filing of The Amended Complaint Comports With The Federal Rule Of Civil Procedure 15(A)(1)

Once again Ocwen interprets the law for its own gain. Ocwen cites to the part of Rule 15(a)(1) in the same way it cites to parts of the Agreement – partially and without thinking through the full measure of the meaning of the words and their import.

6

So, let's see what the entire Fed. R. Civ. P. 15(a)(1)(A) and (B) states:

(a) Amendments Before Trial.

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

1. **(A) 21 days after serving it**

The "it" refers in this case to the Complaint; not to the motion to dismiss. It is the serving of the Complaint that triggers the 21 days. As Ocwen indicated it was not served the Complaint, rather it filed the Motion to Dismiss in lieu of a response. Thus, the Plaintiff was not required to file anything within the 21 days.

2. **(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.**

A motion to dismiss is not a responsive pleading, *Domino Sugar Corp. v. Sugar Workers Local 392, 10 F.3d 1064, 1068 n. 1* (4th Circ. 1993), so the Plaintiff was not obligated to file the Amended Complaint within 21 days of service in response to that Motion.

3. **Ocwen Did Not File The Motion To Dismiss Under Fed. R. Civ. P.Rule 12; Thus, The 21-Day Limit Is Inapplicable.**

Nowhere in Ocwen's Motion to Dismiss to the original Complaint does it invoke Fed. R. Civ. P. Rule 12 as grounds for its Motion to Dismiss. The Plaintiff is not under any obligation, legal or otherwise to assume that its Motion to Dismiss was filed pursuant to Rule 12. Neither should this Honorable Court assume that the Defendant did so.

Based on the foregoing, Plaintiff invokes the full measure of Rule 15 to freely file her Amended Complaint without opposing Counsel's or this Honorable Court's acquiescence.

B. <u>**Ocwen Still Does Not Understand The Import Of Section 4, Paragraph L Of The Agreement: The Clock Started When Ocwen Admitted On January 27, 2015 That It Made An Error In The Terms And Conditions Of The Agreement.**</u>

Ocwen needs to review the Agreement it crafted and signed so that it ceases and desists with these inane and unsupported arguments. Ocwen was required to provide Plaintiff with a corrected Agreement upon the notice of any error to the terms and conditions of the Agreement. How much clearer must section 4, paragraph L be:

> "If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents."

This is not a situation in which we must call Daniel from the grave to decipher or interpret the meaning of the words so clearly stated. Who must notice the error? Ocwen. Because only it could have provided the Plaintiff with a corrected Agreement. As have been discussed in Plaintiff's arguments, Ocwen admitted on January 27, 2015 that there was the $ 8,107.32 error in the principle balance. This error is not trivial. This error voids the Agreement. Furthermore, Ocwen's failure to provide a corrected agreement is a breach of the contract.

This is simple: like 1+ 1= 2 or 2+2=4.

Furthermore, contrary to Ocwen's allegations, Plaintiff did not approach Ocwen to reduce her monthly payments. She was current with her monthly payments since 2005, but sought a principal reduction to qualify for a home rehabilitation loan. This is all spelled out in the Complaints.

No, the Agreement was not a good modification. It had "predatory lending" written all about it, like a worn tattered coat on a homeless person in a blizzard. Someone may say, "At least he has a coat." But it does not function as a coat. Same with the Agreement: it is threadbare semblance of a modification that any homeowner would never need or want. The balloon payment is the kicker. It could not be deciphered readily even by a CPA. The loan terms were hidden. Seemingly, the loan looked as if it would be paid off in 287 months, but upon closer examination, the loan was amortized over 40 years, which accounted for the lower monthly payments.

Yes, in the short-term, Plaintiffs payments were low, but, woe unto her when the Piper plays its tune in 2036! Better be able to pay the balloon payment, which could be as low as $96,000 or as high as $210,000 or lose her home. Then, where would Plaintiff find monies to pay the balloon payment or find affordable housing in her 70's?

Similarly, Defendant's misguided rhetoric concerning the Proof of Claim filed in her bankruptcy highlights its utter failure to grasp the importance of the rule of law. Never, should a creditor see a Proof of Claim as an exercise "to get relief from the Automatic Bankruptcy Stay so the foreclosure could proceed." What about accuracy, adhering to the law that sets forth the necessary contents of every proof of claim? What about the criminal penalties for filing a proof of claim? Every creditor must proceed with caution; yet, Ocwen, so used to giving short-shrift to the rule of law, believes that in filing a fraudulent proof of claim the ends justifies the means.

Fed. Rule of Bankr. P. Rule 3001(c)(2)(A) provides: "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."

Fed. Rule of Bankr. P. Rule 3001(c)(2)(B)provides: "If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim."

Plaintiff will not go into details in this Opposition about the defects in the proof of claim, as they have been set forth in her Objections. *Exhibit 2*.

Regarding the Bankruptcy Court's decision on the Objection to the Proof of Claim, again, Ocwen misstates the facts: the Bankruptcy Court never decided the issues regarding the proof of claim. The Court set a hearing date, but impermissibly, and without good cause dismissed the Plaintiff's bankruptcy case without holding a hearing on the Objection. Accordingly, there is a definite dispute that Ocwen had no right to foreclose on the property. The Agreement was void, false documents were filed in the Circuit Court for Prince George's County, the void Agreement was concealed, and the proof of claim contents did not comport with the Bankruptcy Rules.

And the issues regarding the Proof of Claim are not moot because Shapiro & Brown, filing a false proof of claim under the penalties of perjury, committed a criminal act and violated the aforementioned Bankruptcy Rules. Furthermore the misstatement of the debt violates the Federal Debt Collection Practices Act. The statute of limitations has not run on these violations.

C. **Unclean Hands Is An Effective Remedy To Impugn Ocwen's Unlawful Actions In The Circuit Court For Prince George's County And The United States Bankruptcy Court.**

"The clean hands doctrine was designed to safeguard the judicial process, not to protect the parties." *McGovern, 2004 WL 1764088 at *10* (citing *Smith v. Cessna Aircraft Co.,* 124 F.R.D. 103, 106 (D.Md. 1989)). The actions must be such that they impair the court's ability to effectuate a proper finding in a case, "where [defendants'] unethical behavior has worked a fraud on the court and undermined the judicial process." *Id.* As noted in *Mona v. Mona Elec. Group, Inc.,* 176 Md. App. 672, 714, 934 A.2d 450 (2007), "[f]or the unclean hands doctrine to apply, there must be a nexus between the misconduct and the transaction [at issue], because what is material is not that the [parties'] hands are dirty, but that [they dirty] them in acquiring the right [the parties] now asserts." *Id.*

As Ocwen's agents, Brock & Scott and Shapiro & Brown failed as officers of the court to ensure that the affidavit of indebtedness filed in the Circuit Court for Prince George's County and the proof of claim filed in the United States Bankruptcy Court were true and accurate. It matters greatly that an officer of the court affirms under the penalties of perjury that a document or a statement is true. On the face of the Proof of Claim, Official Form 410, it clearly states: **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Shapiro & Brown knew or should have known, and it can even be stated here that it moved forward with a total reckless regard for the truth and failed utterly to examine the Agreement and the documents Ocwen submitted. The same is true of Brock & Scott in the foreclosure action. What 1L would not have asked what is the indebtedness based on when the promissory did not comport with the amount owed? What 1L would not have asked if there were any documents modifying the original note? It is elementary for officers of the law to question anomalies in documents, in evidence presented. That's what attorneys do – everyday:

verify, think through, verify again, test, confront information given to them by their clients. The proffered evidence shows that both Brock & Scott and Shapiro & Brown, like the many law firms and attorneys enmeshed in the long-standing mortgage crisis, simply shirked their duties as officers of the court, as protectors of the rule of law, and allowed fraudulent documents to be filed in our courts, permitted unlawful foreclosures, and utterly failed *in toto* to protect the integrity of our courts.

### D. **Plaintiff Is On-Point With Her Racketeer Influenced And Corrupt Organizations Act Claim**

Let's make an assumption that Shapiro & Brown and Brock & Scott were not some "run of the mill" law firms. Instead, let's assume that they took seriously their roles as a law firms offering professional services to Ocwen. Let's further assume that they took even more seriously their roles as officers of the court – wherein their main priority was to protect the integrity of our courts. Let's further assume that they recognized Ocwen's difficulties with providing the requisite services to its clients and its problems with filing false documents in our Courts. What would be the result?

First, they would have reviewed Plaintiff's entire Ocwen file in an effort to protect Ocwen's position. Let's remember that Ocwen entered into a Consent Agreement with 49 states and the Consumer Financial Protection Bureau in 2013. All around the United States, states, borrowers have been sorely dissatisfied with Ocwen's operations. Shapiro & Brown and Brock & Scott would have been drawn to all the complaints and calls lodged by the Plaintiff. They would have examined carefully the email colloquy between Matthew Parker and the Plaintiff, wherein Mr. Parker admitted that Ocwen made a mistake in the calculation of the principal balance in the Agreement on January 27, 2015. They would have seen the letters Ocwen sent to Fannie Mae and the Plaintiff that clearly state that the last payment of $39, 782.78, representing the deferred

principle balance to be forgiven, had been forgiven on July 7, 2014. And they would have fully reviewed the Agreement between the Plaintiff and Ocwen to ensure that the relationship between the parties was supported by the Agreement rather than the promissory note, which the Agreement, by its very terms had modified. They would have carefully reviewed the mortgage proof of claim and seen that mortgage payments do not fluctuate in such a manner.

RICO is nothing more than a statute to stop an entity like Ocwen, working in tandem with an entity like Deutsche Bank, another bad actor. Deutsche Bank is without a moral compass. See [www.corp-reseach.org](www.corp-reseach.org) article on Deutsche Bank long history of unlawful activities: collaboration with Nazis, abusive tax shelters, dealing in toxic securities, selling toxic mortgage securities during the financial crisis, Libor manipulation, and money laundering.

It is no surprise that it would hire Ocwen to further its own illegal ends by using any mechanization that will assist it in doing so. In this case, as in others, Ocwen, in turn, uses those law firms who are not performing as officers of the court, not putting the law before its financial gain, has a history of not performing their due diligence to protect both Ocwen and the borrower. The scheme concerns abrogating the law and using the foreclosure and bankruptcy non-existence evidence testing processes to further Ocwen's and Deutshce Bank's scheme of unlawful foreclosures. It is not complicated, just a racket that exploits the weakness in our system of laws and justice. Just a racket that pays law firms who put profit before their professional duties to protect their clients from the client's wrong-doing and not caring one iota about preserving the integrity of our courts and upholding the Rule of Law. It is the law firms that file the documents that get the foreclosure or lift stay motions underway.

E. **FEDERAL ABSTENTION**

Plaintiff refuses to spend much time on answering Ocwen's claim here. The Plaintiff has stated in previous Oppositions that she is not contested the jurisdiction or ruling of the state court. She is contesting Ocwen's filing of false documents in contravention of both federal and state laws to get an unjust result. But for the fraudulent proof of claim filed in the United States Bankruptcy Court, the stay would not have been lifted or it would have subsequently been reimposed, or the foreclosure stayed. The proof of claim was so defective that Plaintiff could not propose a confirmable Chapter 13 plan, and had she been able to do so, the results in the Bankruptcy Court may have been different. Still, the void Agreement is the pink elephant in the room.

## **CONCLUSION**

Plaintiff has met her burden. Her simple and plain statements have put Defendant Ocwen on notice as to what it must defend against.

**WHEREFORE**, the Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss and move this case forward towards a hearing before a jury of Plaintiff's peers.

Respectfully submitted,

March 6, 2018
/s/ Marie Lott Pharaoh
Marie Lott Pharaoh 11080
16029 Dorset Road
Laurel, Maryland 20707
(240) 606-3494 Phone
(240) 536-9157 Fax
mariepharaoh@gmail.com

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

   I certify that on that on March 6, 2018, a copy of the foregoing Opposition electronically filed will be served via the Court's CM/ECF system to the following:

Thomas F. Lucchesi, Esq.
Stradley, Ronon Stevens & Young, LLP
Counsel for Defendant, Ocwen Loan Servicing LLP
And any other counsel of record requesting notice of this action.

/s/Marie Lott Pharaoh
Marie Lott Pharaoh
